UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TONY TERRELL ROBINSON,
        **PLAINTIFF,**

V.                                        CASE NO: 17-CV-0437(DSD-FLN)
                                               JUDGE DAVID S. DOTY

STEPHEN DANNEWITZ, MD. (CORIZON AND/OR CENTURION OF MINNESOTA, LLC)
MINNESOTA DEPARTMENT OF CORRECTIONS (A MINNESOTA AGENCY)
UNKNOWN CORRECTIONAL OFFICER, (MNDOC)
PROFESSIONAL PORTABLE X RAY, INC. (A MINNESOTA CORPORATION)
ADVANCED MEDICAL IMAGING, INC (A MINNESOTA CORPORATION)
ANNE GLASER M.D. (ADVANCED MEDICAL IMAGING, INC.)
RANJIV SAINI M.D. (ADVANCED MEDICAL IMAGING, INC.)
AIA MANAGEMENT SERVICES, LLC (A FLORIDA CORPORATION)
CORIZON, LLC. (A MISSOURI CORPORATION)
CENTURION OF MINNESOTA, LLC (A MINNESOTA CORPORATION)
JEANNE LUCK, LPN (CORIZON LLC., AND/OR CENTURION OF MINNESOTA, LLC)
JOHN DOE, RN (CORIZON LLC., AND/OR CENTURION OF MINNESOTA, LLC)
        **DEFENDANTS,**
**DEMAND FOR JURY TRIAL**



**FIRST AMENDED COMPLAINT**

**I. JURISDICTION & VENUE**

1. This is a civil action authorized by 42 U.S.C. § section 1983 to redress the deprivation, under color of state law, of rights secured by the constitution of the United States. The court has jurisdiction under 28 U.S.C § section 1331 and § 1343(a)(3)(4). This court also has Diversity Jurisdiction under 28 U.S.C. § 1332(a) as all defendants are located outside the plaintiffs home state of Illinois.

2. The court has supplemental jurisdiction over the plaintiffs state tort claims under 28 U.S.C. § 1367.

3. The District of Minnesota is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to these claim(s) occurred.

SCANNED
SEP 1 4 2017
U.S. DISTRICT COURT MPLS

## II. PLAINTIFF

4. Plaintiff, Tony Terrell Robinson, was at all times mentioned herein a prisoner of the State of Minnesota in the custody of the Minnesota Department of Corrections. Plaintiff currently resides, is a citizen of, and is confined in Federal Correctional Institution- Greenville, in Greenville, Illinois.

## III. DEFENDANTS

5. Defendant, Stephen Dannewitz, M.D., is a citizen of Minnesota and was at all times mentioned herein an employee of Corizon, INC. or Centurion of Minnesota, LLC and/or Minnesota Department of Corrections. He is legally responsible for providing adequate medicale care to all inmates that are housed in his current assigned locations.

6. Defendant, Minnesota Department of Corrections is a Minnesota agency and was at all times the employer of Defendant Unknown Correctional Officer, and were both legally responsible for the welfare of all inmates confined.

7. Defendant, Unknown Correctional Officer is a Citizen of the State of Minnesota, was at all times mentioned herein a correctional officer who is legally responsible for the welfare of all inmates.

8. Defendant, Professional Portable X-Ray, INC is a Minnesota Company and was at all times mentioned herein contracted by the State of Minnesota and is legally responsible for providing accurate readings of X-Ray services to the all of the Department of Corrections correctional facilities.

9. Defendant, Advance Medical Imaging, INC. is a Minnesota company and was at all times mentioned herein the interpreting company that is contracted by Professional Portable X-Ray INC. and is legally responsible to re-interpret all X-Ray's provided by Professional Portable X-Ray, INC.

10. Defendant, Anne Glaser M.D., is a citizen of the State of Georgia and was at all times mentioned herein an Interpreting Doctor for Advanced Medical Imaging, INC. she is legally responsible for interpreting and reporting accurate finding of X-Ray taken by Professional Portable X-Ray, INC.

11. Defendant, Ranjiv Saini M.D., is a citizen of Florida and was at all times mentioned herein an

interpreting Doctor of Advanced Medical Imaging, INC. He or She was contracted by AIA Management Services, LLC to provide services to Advance Medical Services, LLC and is legally responsible for interpreting and reporting accurate finding of X-Ray's taken by Professional Portable X-Ray, INC.

12. Defendant, AIA Management Services, LLC, is a Florida company and was at all times mentioned herein the company that defendant, Ranjiv Saini. M.D. worked for, who contracted his services to Advance Medical Imaging, INC. AIA is legally responsible for providing adequate services to it's clients.

13. Defendant, Corizon, LLC is a Missouri company and was at all times mentioned herein contract by the Minnesota Department of Corrections and is legally responsible to provide adequate Medical care to all inmates who are in their custody.

14. Defendant, Centurion of Minnesota, LLC is a Minnesota company and was at all times mentioned herein contracted by the State of Minnesota and Minnesota Department of Corrections and is legally responsible to provide adequate Medical care to all inmates who are in the custody of the Minnesota Department of Corrections.

15. Defendant, Jeanne Luck, LPN., is a citizen of Minnesota and was at all times mentioned herein an employee of Corizon, INC. or Centurion of Minnesota, LLC and/or Minnesota Department of Corrections. She is legally responsible for providing adequate Medical care to all inmates that are housed in her current assigned locations.

16. Defendant, John Doe, RN. is a citizen of Minnesota and was at all times mentioned herein an employee of Corizon, INC. or Centurion of Minnesota, LLC and/or Minnesota Department of Corrections. He is legally responsible for providing adequate Medical care to all inmates that are housed in his current assigned locations.

17. Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint each defendant acted under color of state law.

## IV. FACTS

18. On or about April 6th, 2014 after dinner, Plaintiff was playing basketball on the SHU (special housing unit) basketball court. The surface was uneven gravel like ground. During this time plaintiff felt a snap in plaintiff's ankle area, plaintiff immediately notified the unknown correctional duty officer. Plaintiff told the unknown correctional duty officer "I think I just broke my ankle". He notified the security center officer as plaintiff hopped on plaintiff's good left leg to the door. The security center officers opened the outer door and let the plaintiff into the unit. Upon information and belief, plaintiff believes Sgt. T. Bacigalupo was working that evening. He contacted the health services department. He provided plaintiff a wheelchair and pushed plaintiff to health services. All during which plaintiff was in excruciating pain.

19. Plaintiff was examined by defendant John Doe, RN. and he examined plaintiff for approximately 10 minutes. Plaintiff told Defendant, John Doe, RN that he "felt a snap in the ankle area, there was extreme pain in the ankle area, because of the pain, that he could not walk on it and that plaintiff thought he broke his ankle" Defendant John Doe, RN. after examining plaintiff stated "there is not a doctor here now and I don't feel that it is broken", plaintiff asked for a lower tier restriction as his room was located on second tier, his request was denied based on some "policy", but he then orders crutches, without no instructions on how to use the crutches, nor how to use them going up and down stairs, ice packs, ibuprofen, no restrictions were given, nor any instructions on how to care for injury and he also told the plaintiff that he would have to place plaintiff on the list for the next day for x-ray. He also told plaintiff that based on policy that he would place plaintiff on the list to see the doctor because there was not a doctor on site. Plaintiff was wheeled back to the unit and plaintiff asked the unknown unit office if he could change plaintiff's room assignment from the top tier to the lower tier and that request was denied. The defendant, the unknown duty officer stated that "based on policy, there needed to be a doctor's order". Several times during the night plaintiff was awaken with tremendous pain.

20. On or around April 7th, 2014 Plaintiff signed up for "sick call" (sick call is a request to be seen from the Medical staff). Plaintiff was seen by defendant Jeanne Luck, LPN, and explained to her that Plaintiff had "felt a snap in his ankle area while playing basketball, that he was experiencing

severe pain in the area and that it was swelled up". She examined plaintiff's ankle and states that she "doesn't believe it's broke" and she ordered an x-ray. she also ordered a lower tier restriction. And gave plaintiff a CAM WALKER BOOT. (a specialty boot) Plaintiff was seen in Medical on various occasions because plaintiff continued to experience pain. Between April 8th and April 15th, 2014.

21. On April 16, 2014, Jaime French who works for defendant, Professional Portable X-Ray, INC. provided x-ray services of ankle ***SEE EXHIBIT #1*** on April 16th, 2014, defendant Ranjiv Saini M.D. from defendant Advanced Medical Imaging, INC. interprets x-ray taken by defendants Jamie French and Professional Portable X-Ray, INC. On one or more various occasions Plaintiff was seen in the Health Services Department for various issues regarding plaintiff's ankle between April 16th, 2014 through April 28th, 2014.

22. On April 29th, 2014, Plaintiff once again signs up for sick call because plaintiff continues to experience pain in his right ankle. Plaintiff was seen by defendant Stephen Dannewitz M.D. ***See Exhibit #18***. He states that he believe "the wrong site was x-rayed" previously. He dictated that his diagnosis was "foot injury". He also stated that "He has pain over the medial first metatarsal and the arch" He orders an x-ray of the foot for the following day.

23. On April 30th, 2014, Plaintiff was seen in Health Service Department and was first seen by a J. Welch, RN. who is employed by defendant, Corizon, LLC, and or Centurion of Minnesota, LLC. and she takes all of Plaintiff's vitals readings for the doctor, she explained that plaintiff was here to see the doctor regarding my ankle injury. Plaintiff is x-rayed again by Jamie French, technologist for defendant. Defendant, Stephen Dannewitz M.D., now diagnosis Plaintiff with a "foot sprain" but discontinues "crutches and splint" defendant Anne Glaser M.D. from defendant Advanced Medical Imaging, INC. interprets x-ray taken by defendants Jamie French and Professional Portable X-Ray, INC. ***See Exhibits #2 & 18.***

24. On one or more various occasions plaintiff signed up for sick call to be seen in Health Services between April 30th, 2014 through May 7th, 2014, because plaintiff continued to experience extreme pain.

25. On May 7th, 2014, Plaintiff was seen by a Jane Doe RN. She took plaintiff's vital's for Dr. Dannewitz. She explained that I was here to see Dr. Dannewitz regarding my ankle injury. Plaintiff was then seen by defendant, Stephen Dannewitz M.D. He admits that he didn't want plaintiff to be using crutches by stating "I asked him not to use crutches" he then states "no weight bearing on foot until I see a repeat x-ray" He now diagnosis plaintiff with "right foot pain" . He also dictated in plaintiff's Medical record notes that plaintiff "has an ecchymosis on his instep which make me think we may have missed a fracture or he has a sprain that is resolving". ***See Exhibits #19***. On this same day of May 7th, 2014, Plaintiff was yet again x-rayed by Jamie French, technologist for Professional Portable X-Ray, INC. who x-rays right foot with a negative finding. Defendant Anne Glaser M.D. from defendant Advanced Medical Imaging, INC. interprets x-ray taken by defendants Jamie French and Professional Portable X-Ray, INC. ***See Exhibit #3.***

26. After visiting with technologist, plaintiff was seen again by defendant, Stephen Dannewitz M.D. who had plaintiff waiting in a seat in the hallway while he personally went and reviewed plaintiff's x-ray with technologist Jamie French from defendant, Professional Portable X-Ray, INC. Neither, are certified Radiologist. He called out the room and said "see, I told you nothing is broken, I looked for myself" The plaintiff was never seen by defendant, Stephen Dannewitz M.D. again. He never called plaintiff back to provide any further treatment or precautions based on his thoughts of dictated "missed fracture or resolving sprain". Defendant, Stephen Dannewitz, MD., never gave any instructions on how to care for ankle injury, nor did he advise plaintiff to seek care upon release. ***See Exhibit #19.***

27. Plaintiff was release from this prison on or around May 8th, 2014 through the day of May 13th, 2014. with NO notes to continue treatment, NO CAM BOOT, NO crutches, NO medication order, and NO instructions to seek care regarding plaintiff's continued pain experience and injury to his ankle.

28. In late May of 2014, Plaintiff contacts Twin Cities Orthopedics and schedules an appointment to be seen by Dr. Jeffrey Seybold M.D.

29. On June 13, 2014, Plaintiff was seen by Dr. Seybold. He took X-Rays and indeed found a "non

displaced fracture at the lateral navicular without displacement at the talonavicular joints" he immediately placed plaintiff in a air compressed CAM WALKER BOOT and gave plaintiff orders to only removed boot for driving, sleeping, and showering activities. He also ordered a CT scan so he could confirm the fracture and see if there has been any form of healing. *See Exhibit 4-7.*

30. On June 17th, 2014, Plaintiff was seen at CDI Mendota Heights CT SCAN which confirms an "acute to subacute fracture involving the plantar lateral aspect of talonavicular joint" *See Exhibit #8.*

31. On June 25th, 2014, Plaintiff was seen by Jeffrey Seybold M.D. Dr. Seybold noted in his notes of plaintiff's Medical records dictation. "the patient has not noted significant relief of pain utilizing a cast boot since his last visit. He continues to endorse pain and discomfort with any weight bearing activity localized over the lateral hindfoot" the patient also notes occasional pain radiating. *See Exhibits #9-11.*

32. During this visit Dr. Seybold confirms that the CT SCAN confirmed the fracture and that there were "no evidence of fracture healing" He also stated " I (Dr. Seybold) do not feel that there is any chance this fracture will heal on it's own". We talked about two different procedures. He also advised plaintiff about the different effects on both procedures. Plaintiff opted for the removal of the bone. Plaintiff and Dr. Seybold spoke in detail about pre/post surgery courses of actions. *See Exhibits #10.*

33. On July 11, 2014, Plaintiff had surgery at the Minnesota Valley Surgery Center in Burnsville, Minnesota to remove the fractured fragment. *See Exhibits #12-14.*

34. Plaintiff called Dr. Seybold's office to get more pain medication because plaintiff was experiencing tremendous amounts of pain on or between July 15th, 2014 through July 21st, 2014.

35. On July 22nd, 2014, Plaintiff was seen by Dr. Seybold for post surgery review. X-Rays were taken and stitches were removed. Dr Seybold discontinues aspirin and orders "tramadol to assist in pain control". He also states "patient may transition out of boot into a supportive tennis show". *See Exhibits #15-17.*

36. On August 14th, 2014, Plaintiff was federally indicted. Plaintiff was housed in Sherburne County Jail which plaintiff reported his recent surgery to Medical staff. Plaintiff also exposed his

doctors order of transistioning to supportive shoe.

37. On or around August 22nd, 2014, Plaintiff was release to the custody of Minnesota Department of Corrections being housed at the Ramsey County Jail in Saint Paul, Minnesota. Plaintiff reported on various occasions to Jane Doe, RN. and Jane Roe, MD. that plaintiff was still experiencing post surgery pain and that plaintiff should be provided a supportive shoe per post surgery's Dr. Seybold's recommendations. On or around two weeks of being at the Ramsey County Jail, plaintiff was transferred back to Minnesota Department of Corrections Lino Lakes Correctional Facility. Plaintiff reported continued pain and suffering upon arrival and through-out his stay at this facility. Plaintiff also reported post surgery concerns and recommendations from Dr. Seybold. his orders were denied.

38. Plaintiff was then transferred again back to Sherburne County Jail in Elk River, Minnesota. On or around October 22nd, 2014. While being housed here plaintiff reported the need for further Medical attention regarding post surgery ankle pain and that plaintiff needed a different shoe for more support. Dr Seybold's orders were denied.

39. On May 19th, 2015. Plaintiff was seen in a Twin Cities Orthopedics office in Rogers, Minnesota by Dr. Edwards. Dr. Edwards examined plaintiff's right ankle and stated to plaintiff that "he could expect pain and discomfort to be permanent but that it appears that the site appears to be healing well".

40. On or around September 20th, 2015. Plaintiff was transferred to the custody of the Bureau of Prison - Holding Facility Oklahoma. Where plaintiff reported his ankle pain and post surgery recommendations by Dr. Seybold. His orders were denied.

41. On or around October 6th, 2015. Plaintiff was transferred to designated facility in Pekin, Illinois. Plaintiff reported that he has had surgery in July of 2014 and that plaintiff needed to be provided a supportive tennis shoe per post surgery recommendations by Dr. Seybold. On more that 6 occasions plaintiff has been seen regarding pain in plaintiff's ankle area without given any supportive shoe. His orders were denied.

42. On July 8th, 2016, @ 6:37PM, Dr. Jeffrey Seybold, MD. from Twin Cities Orthopedics

e-mailed plaintiff and stated the following: "Tony, We received the disc with all the XR today and I had a chance to review the images. The first XR obtained on 4/16/14 were of the ankle, which makes it tough to see the navicular bone, but there does appear to be an irregularity of the bone, particularly on one of the XR views. The foot XR on 4/30/14 clearly demonstrate a navicular fracture, and the fracture line is also readily visible on the 5/7/14 XR. It appears as we saw on the XR we obtained when you first saw me in clinic. Hopefully this helps. I do have all the outside information from the Department of Corrections now needed to comment fully on the case. Dr. Seybold." *See Exhibit #20.*

43. On September 19, 2016, Plaintiff was transferred to Federal Correction Facility in Greenville, Illinois.

44. On September 22nd, 2016, Plaintiff was seen by Dr. Ahmed in Greenville's Health Services Department and during this visit Dr. Ahmed determined the Plaintiff needed a MRI on right ankle due to continued pain.

45. On October 12th, 2016, Plaintiff was approved by BOP's regional office to get MRI.

46. This complaint follows.

## V. EXHAUSTION OF ADMINISTRATION REMEDIES

47. During the time that injury was sustained, Plaintiff followed all administrative remedies that were required. Plaintiff was released from prison on or around May 8th, 2014 through May 13th, 2014. In pursuant to the Prison Litigation Reform Act (PLRA), "Litigants who file prison condition actions after release from confinement are no longer 'prisoners' for the purposes of section 1997e(a) and therefore, need not satisfy the exhaustion requirement of this provision". Ahmed V. Dragovich, 297 F. 3d. 201 (3rd Cir. 2002) Cited in Arms-Adair V. Black Hawk County U.S. Dist Lexis 70315 (8th Cir. 2013).

## VI. Legal Claims

48. Plaintiff re alleges and incorporate by reference paragraphs 1-47. For the basis of the following claims.

49. Defendant's Dannewitz, Unknown Correctional Officer, Minnesota Department of Corrections, Professional Portable X-Ray, Advance Medical Imaging, Anne Glaser M.D., Ranjiv Saini, M.D., AIA Management Services,LLC, Corizon. LLC, Centurion of Minnesota. LLC, Jeanne Luck, LPN, John Doe, RN were deliberately indifferent to plaintiff's serious Medical needs which violated plaintiff Tony Terrell Robinson's protected rights and constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

50. Defendant's Dannewitz, Unknown Correctional Officer, Minnesota Department of Corrections, Professional Portable X-Ray, Advance Medical Imaging, Anne Glaser M.D., Ranjiv Saini, M.D., AIA Management Services,LLC, Corizon. LLC, Centurion of Minnesota. LLC, Jeanne Luck, LPN, John Doe, RN delayed treatment, delayed access and denied adequate Medical care which violated plaintiff's protected rights and constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

51. The failure of defendant's Dannewitz, Unknown Correctional Officer, Minnesota Department of Corrections, Professional Portable X-Ray, Advance Medical Imaging, Anne Glaser M.D., Ranjiv Saini, M.D., AIA Management Services,LLC, Corizon. LLC, Centurion of Minnesota. LLC, Jeanne Luck, LPN, John Doe, RN to take preventative action or lack thereof, caused the all defendants to be deliberate indifferent of the harm posed by the conditions of confinement which violated plaintiff Tony Terrell Robinson's protected rights and constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

52. The failure of defendant's Dannewitz, Unknown Correctional Officer, Minnesota Department of Corrections, Professional Portable X-Ray, Advance Medical Imaging, Anne Glaser M.D., Ranjiv Saini, M.D., AIA Management Services,LLC, Corizon. LLC, Centurion of Minnesota. LLC, Jeanne Luck, LPN, John Doe, RN to provide adequate and prompt treatment of plaintiff's serious Medical need of a broken bone in his right ankle, constitutes a violation of Plaintiff's Eighth Amendment Protected rights under the United States Constitution, and the State of Minnesota's Negligence, Intentional Infliction of Emotional Distress and Minnesota's Medical Malpractice Tort Laws.

53. The failure of defendant's Dannewitz, Unknown Correctional Officer, Minnesota Department of Corrections, Professional Portable X-Ray, Advance Medical Imaging, Anne Glaser M.D., Ranjiv Saini, M.D., AIA Management Services,LLC, Corizon. LLC, Centurion of Minnesota. LLC, Jeanne Luck, LPN, John Doe, RN to take preventative actions to curb the known pattern of physical injuries due to the facts of inadequate basketball surfaces, constitutes deliberate indifferences to the plaintiff's safety and this failure contributed to the proximate cause to the above described violations of Plaintiff's Eighth Amendment protected rights under the United States Constitution, and the State of Minnesota's Negligence, Intentional Infliction of Emotional Distress and Minnesota's Medical Malpractice Tort Laws.

54. By Minnesota Department of Corrections contracting with defendants, Corizon, INC., and/or Centurion of Minnesota, LLC at all mentioned herein this complaint, these companies and agent their of, had a duty to provide adequate care to all inmates in their care. All defendants breached that duty.

55. More Specifically, Defendant, John Doe, RN. breached that duty on the day plaintiff was injured. He failed to provide emergency care to a serious injury, he also failed to provide instructions to use the crutches, and he denied lower tier request. His breached of duty, caused irreparable injury to plaintiff. These actions constitute cruel and unusual punishment under the Eighth Amendment of the United States Constitution, and also constitutes Negligence and Medical Malpractice under the Laws of the State of Minnesota.

56. Defendant, Stephen Dannewitz, MD., breached the duty of care, when he diagnosis plaintiff with a "foot sprain" but at the same time discontinued "crutches and splint". He further breached the duty of care when he stated "I asked him (plaintiff) not to use crutches" but then states "no weight bearing on foot until I see a repeat x-ray", all in the same visit. He diagnosis plaintiff with "right foot pain]". Defendant, Stephen Dannewitz, MD. continued to breach his duty and deliberate indifferent to provide adequate care when on May 7th, 2014 he dictates in plaintiff's Medical records that "he (plaintiff) has an ecchymosis on his instep which make me thank we may have missed a fracture or he has a sprain that is resolving". At this point he felt that something was

"missed", but he failed to correct or attempt to correct. Even on this same day, He called himself to "personally" view plaintiff's x-ray's and then determined that there was "not a fracture" based off his determination. Where he is not a certified Radiologist to view and decide if there was a fracture or not. By his negligent attempt, he further caused the injury, and the plaintiff endured further irreparable damage and pain. These actions constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution, and also constitutes Negligence and Medical Malpractice under the Laws of the State of Minnesota.

57. Defendant, Unknown Correctional Officer was deliberate indifferent under the Eighth Amendment to the United States Constitutionand also constitutes a *Monell* claim, when he known, after I told him immediately when I felt the snap that "I think I just broke my ankle", that plaintiff experienced a serious injury when I returned back in the unit after coming from health service with crutches (which plaintiff did not receive any instructions on how to use, rather go up and down on stairs with), a prescription order for pain and was awaiting to be x-rayed, asked for him to relocate plaintiff from the top tier to the main level. He was further indifferent when he relied on so "policy" which allowed from him to deny request to be relocated. At the very least, this defendant was negligent because he had a duty to care to provide a safe and secure living area and protect the welfare of all inmates. He breached this duty, this oath, when he negligently denied plaintiff request to be relocated due to plaintiffs suspected injury. Out of caution, this defendant should have moved plaintiff or asked his superior officer for permission or the protocol to do so. The Unknown Correctional Officer failed to use common sense, and was negligent in his response to plaintiff's request. These breach of his duty further caused plaintiff to experience excruciating pain going up and down stairs, for meal, counts, medication calls, and sick call. The continued stress on the ankle cause swelling which ultimately caused plaintiff to have surgical intervention.

58. Defendant, Minnesota Department of Corrections is responsible under *Monell* for the actions of Defendant Unknown Correctional Officer as he is employed by this agency and relied on their "policy" to make his decision to deny plaintiff's request to be relocated to the main level do to my ankle injury.

59. Defendant's, more specifically, defendant, Professional Portable X-Ray, INC, Advance Medical Imaging, INC., Ranjiv Saini, MD., and Anne Glaser, MD., By these defendant's negligently read x-rays on April 16th, 2014, April 30th, 2014, and May 7th, 2017, and Stephen Dannewitz, MD's failed attempt to read the May 7th, 2017, x-ray taken by Jamie French, constituted Negligence and Medical Malpractice under the laws of State of Minnesota. These defendants cause plaintiff to endure the Eighth Amendment Violations of delayed care, described within this complaint. As for the failure of these defendants, Plaintiff Tony Terrell Robinson, has suffered, is suffering, and will suffer severe and permanent disability, injuries, and medical expenses

60. As a result of defendant's Dannewitz, Unknown Correctional Officer, Minnesota Department of Corrections, Professional Portable X-Ray, Advance Medical Imaging, Anne Glaser M.D., Ranjiv Saini, M.D., AIA Management Services,LLC, Corizon. LLC, Centurion of Minnesota. LLC, Jeanne Luck, LPN, John Doe, RN delayed care and failure to provide prompt adequate Medical treatment., Plaintiff suffered further injury, both physical and emotional.

61. The Plaintiff had no plain, adequate, or complete remedy at law to redress the wrongs described herein, Plaintiff has been and will continue to be irreparably injured by the conduct or lack thereof defendant's Dannewitz, Unknown Correctional Officer, Minnesota Department of Corrections, Professional Portable X-Ray, Advance Medical Imaging, Anne Glaser M.D., Ranjiv Saini, M.D., AIA Management Services,LLC, Corizon. LLC, Cenurion of Minnesota. LLC, Jeanne Luck, LPN, John Doe, RN unless this court grants relief that plaintiff seeks.

## VII. REQUEST OF RELIEF

**Wherefore**, Plaintiff respectfully request that this court enter judgement in favor of plaintiff.

62. A declaration stating that defendants, the acts and omissions described herein violated plaintiff Tony Terrell Robinson's protected right under the Eighth Amendment of the United States Constitution and the Negligence and Intentional Infliction of Emotional Distress Laws and Malpractice Tort Laws of the State of Minnesota.

63. Compensatory damages in the amount of $2,000,000.00 against each defendant, jointly, and

severally for being deliberate indifferent to plaintiff's serious Medical needs, for delaying treatment and delaying access to adequate Medical care and for harm posed by the conditions of confinement that was the cause of plaintiffs Medical injury. .

64. Punitive damages in the amount of $20,250,000.00 or $10,000.00 per month against each defendant, jointly, and severally for the duration of the plaintiff's life (which is estimated at 45 years), for pain and emotional suffering and once plaintiff dies, proceed will continue to plaintiff's next of kin.

65. A jury on all issues afforded by a jury.

66. Plaintiff's cost in the suit.

67. Any additional relief this court deems just, proper and equitable.

Signed this 11TH day of September in 2017.

**Respectfully Submitted,**

Tony Terrell Robinson
Inmate ID: 18099-041
P.O. Box 5000
Greenville, Illinois 62246-5000

### VERIFICATION

I have read the complaint and hereby verify that the matters alleged therein are true, expect as to matters alleged on "upon information and belief" and as to those, I believe them to be true.

**I certify under penalty of perjury that the forgoing is true and correct.**

**Executed in Greenville Illinois on**

Tony Terrell Robinson