RAE #9

RECEIVED BY MAIL
MAY 21 2020
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
MAY 21 2020
U.S. DISTRICT COURT MPLS



# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

TONY ROBINSON,

        Plaintiff,

v.

        Case No. 17-437 (DSD/KMM)

ADVANCED MEDICAL IMAGING, INC.,
*et al.*,

        Defendants.

**DEFENDANT DR. RANJIV SAINI'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Defendant Ranjiv Saini, M.D., by and through counsel, Leib Knott Gaynor LLC, responds to Plaintiff's First Set of Interrogatories and Requests for Production of Documents as Follows:

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**: Please state whether Dr. Saini's insurance carrier has ever paid a claim for Dr. Saini before?

**RESPONSE**: Objection, this interrogatory is overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 2**: Please state whether Dr. Saini has ever been a party to any previous cause of action for any claim?

    a) If so, for what type of claim.

    b) If so, from what court, and under what case #.

**RESPONSE:** Objection, this interrogatory is overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. Subject to these objections and without waiving the same, court records are publicly available documents.

**INTERROGATORY NO. 3:** Please state whether Dr. Saini has ever been found to be a state actor in any previous cause of action?

    a) If so, in what case, and from what court?

**RESPONSE:** Objection, this interrogatory is overly broad, ambiguous, and unduly burdensome. Subject to these objections and without waiving the same, Dr. Saini does not recall a lawsuit in which his status as a private party or state actor was determined by a court. In addition, court records are publicly available documents.

**INTERROGATORY NO. 4:** Please state the amount that was paid to Dr. Saini for interpreting plaintiff, Tony Terrell Robinson's April 16, 2014, x-ray?

**RESPONSE:** Object to the request as seeking information neither pertinent to a matter in issue or reasonably calculated to lead to the discovery of pertinent information. Further object on grounds that the burden imposed on Dr. Saini is disproportionate to the value of the alleged evidence. Dr. Saini's compensation is neither admissible nor relevant.

**INTERROGATORY NO. 5:** Please state the average number of x-rays that Dr. Saini interprets on a daily, monthly, and yearly basis?

**RESPONSE:** Objection, this interrogatory is overly broad, unduly burdensome, and seeks information disproportionate in the burden imposed on Dr. Saini to the probative value of the information. Subject to these objections and without waiving the same, Dr. Saini has no personal knowledge of the numbers of x-rays he has reviewed on a daily, monthly, and yearly basis and no way to determine with any reasonable certainty.

**INTERROGATORY NO. 6:** Please state whether Dr. Saini could suggest to ordering physician that further x-rays are need [*sic*] of a different site?

    a) If so, by what means would Dr. Saini take.

**RESPONSE:** Objection, this interrogatory is vague and overly broad. Subject to these objections and without waiving the same, a radiologist's duty under the standard of care is defined by the specific circumstance of each case.

**INTERROGATORY NO. 7:** Please state whether Dr. Saini has previous [*sic*] asked any ordering physician for additional x-ray orders of different sites for probing purposes, to determine a clear x-ray interpretation?

    a) If so, in which order, and why?

**RESPONSE:** Objection, this interrogatory is vague and overly broad. Specifically, the phrase "of different sites for probing purposes, to determine a clear x-ray interpretation" is unintelligible. Further object to the extent the request seeks information pertaining to other patients, as regulations governing the confidentiality of patient healthcare information limit disclosure. See 45 C.F.R. § 160. Subject to these objections and without waiving the same, every radiologist has recommended follow up studies in some circumstance. Dr. Saini was not required by the standard of care to suggest an x-ray of the foot based on his interpretation of the x-ray of plaintiff's ankle.

**INTERROGATORY NO. 8:** Please state what steps must Dr. Saini take if he views an x-ray, finds irregularity of a bone, from an x-ray that was contracted to him?

**RESPONSE:** Objection, this interrogatory is vague and overly broad. Specifically, but not by way of limiting the objection, the term "irregularity" is not a term used in diagnostic radiology and could mean anything within the context of the hypothetical question. Subject to

these objections and without waiving the same, a radiologist's duty under the standard of care is defined by the specific circumstance of each case. Dr. Saini cannot speculate on the standard of care required in an undefined, hypothetical circumstance

**INTERROGATORY NO. 9**: Please state whether Dr. Saini has ever served as an expert witness in the field of radiology in any previous or current cause of action?

**RESPONSE**: Objection, this interrogatory is overly broad, unduly burdensome, and seeks information disproportionate in the burden imposed on Dr. Saini to the probative value of the information. Subject to these objections and without waiving the same, Dr. Saini is a board-certified radiologist and an expert within his field. Whether he has served as an expert in other matters is not relevant to any issue in this matter. The question serves only to harass Dr. Saini.

**INTERROGATORY NO. 10**: Please state in hindsight, whether Dr. Saini would do anything differ [sic] in respect to plaintiff, Tony Terrell Robinson's, April 16, 2014, x-ray, from the information he knows today?

**OBJECTION**: Object to the form of the request as vague, ambiguous and speculative. Subject to the objection and without waiving the same, Dr. Saini met the standard of care with respect to the interpretation and would do so again.

**INTERROGATORY NO. 11**: Please state in particular to Tony Terrell Robinson's, April 16, 2014, x-ray, that Dr. Saini, M.D., interpreted, was there any abnormally, or irregularity seen in any bone? On any view?

**RESPONSE**: Objection, this this request is vague. Subject to these objections and without waiving the same, Dr. Saini's written interpretation is complete and accurate.

**INTERROGATORY NO. 12**: Please state whether Dr. Saini was licensed, on April 16, 2014, to interprets [sic] x-ray's [sic] that were taken in the state of Minnesota?

a) Under what state is Dr. Saini licensed?

b) Is Dr. Saini in good standing with any licensing board?

**RESPONSE:** As to the interrogatory and subsection A, Dr. Saini is a board-certified diagnostic radiologist licensed to practice in 27 states, including the state of Minnesota. As to Subsection B, object to the question as ambiguous and refer to the answer above.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** Please provide copies of any and all documents of any agreement/contract(s) that allowed Dr. Saini to contact with Tony Terrell Robinson's, April 16, 2014, x-ray.

**RESPONSE:** Object to the request as overbroad and unduly burdensome, seeking information not relevant to the matter and imposing a burden disproportionate to the probative value. Further object to the request as seeking confidential financial information that the plaintiff should not possess. Subject to these objections and without waiving the same, attached is Exhibit 1.

**REQUEST NO. 2:** Please provide copies of any and all licenses/certificates to practice any type of medicine.

**RESPONSE:** Object to the request as overbroad and unduly burdensome, seeking information not relevant to the matter and imposing a burden disproportionate to the probative value. Further object to the request as seeking information that is publicly available. Dr. Saini's qualifications and authority are not at issue. The request serves merely to harass Dr. Saini.

**REQUEST NO. 3:** Please provide copies of any and all complaints filed against Dr. Saini, M.D. at any state, local, or federal agency.

**RESPONSE:** Object to the request as overbroad and unduly burdensome, seeking information not relevant to the matter and imposing a burden disproportionate to the probative value. Further object to the request as seeking information that is publically available. Dr. Saini's qualifications and authority are not at issue. The request serves merely to harass Dr. Saini.

**REQUEST NO. 4:** Please provide a copy of the standard of care that Dr. Saini followed when interpreting Plaintiff Tony Terrell Robinson's, April 16, 2014 x-ray.

**RESPONSE:** Objection. This request is vague and overly broad. Subject to these objections and without waiving the same, there is no such single responsive document.

**As to Answers:**

Dated this 14 day of February, 2020.

By: _____
Ranjiv Saini, M.D.

**As to Objections:**

Dated this 14th day of February, 2020.

### LEIB KNOTT GAYNOR LLC

By: *s/ Douglas S. Knott*
Douglas S. Knott, SBN 0394856
Attorney for Defendant Ranjiv Saini, M.D.
219 N. Milwaukee Street, Suite 710
Milwaukee, WI 53202
Telephone: (414) 276-2109
Fax (414) 276-2140
Email dknott@lkglaw.net



rec'd
2-24-20
TR

## American Medical Initiatives' Teleradiology Services
### INDEPENDENT CONTRACTORS AGREEMENT

THIS AGREEMENT is made and entered into this 20th day of November 25, 2013 with an effective date of November 25, 2013 by and between **AMERICAN MEDICAL INITIATIVES** (hereinafter "AMI") and **RANJIV SAINI, M.D.** (herein after "Contractor" or "Provider"). This document, when properly executed by both parties, shall supersede all previous agreements and oral understandings between the parties.

### RECITALS

WHEREAS, Contractor provides services of **Ranjiv Saini**, M.D. ("Provider"), who is duly licensed and qualified to practice medicine in the specialty of radiology, and more specifically teleradiology, in the states for which he/she will provide services;

WHEREAS, AMI conducts teleradiology services in the United States and desires to contract for the services of a duly qualified physician to provide radiological and diagnostic services on a schedule as outlined herein and as agreed to by the parties; and

WHEREAS, Provider wishes to provide the services of a duly qualified and licensed physician in the United States and is willing to serve AMI in the capacity set forth above on the following terms and conditions.

AMI and Provider hereby agree as follows:

### AGREEMENT

1. **TERM.** This Agreement will be effective as of November 25, 2013 (the 'Effective Date") and will continue in effect until November 25, 2014 unless terminated earlier as provided herein. Upon the Date of Expiration, this Agreement may renew upon the mutual agreement of both parties and extend for additional periods of one year. Either party may provide the other party with written notice of non-renewal at least one hundred eighty (180) days prior to the Date of Expiration.

2. **SERVICE AND SCHEDULE.** Provider hereby undertakes to provide services for radiological interpretations from the effective date of this Agreement until such Agreement is terminated or expired as provided herein, upon all of the terms and conditions as hereinafter set forth.

   Provider shall devote the necessary time and resources rendering the stated services in accordance with the laws of applicable states, customs of the medical profession and recognized canons of professional ethics. Provider agrees that at all times he will perform the contracted duties and functions at the appropriate local standard of care in strict conformance with currently approved practices in this field of medicine in a competent and professional manner. AMI shall exercise no control over the radiological services or interpretations rendered

1

**EXHIBIT 1**

by Provider. Provider and AMI agree that it is not the intent of this Agreement to interfere with the professional judgment of Provider. AMI shall not, in any manner, directly or indirectly regulate or control the Provider's independent judgment concerning the practice of medicine.

Both parties hereby acknowledge and agree that Provider shall perform the radiological interpretations from the United States during the term of this Agreement. Provider shall coordinate with each other to arrange for a Provider to be available to provide radiology interpretations at mutually agreed times.

3. COMPENSATION. For all services to be rendered by Provider in any capacity hereunder, AMI shall compensate Provider as follows:



First payment for professional services will be issued 30 days after the completion of the first full calendar month of services.

4. TERMINATION. After providing reasonable opportunity to the other party to cure within thirty (30) days, either party may terminate this Agreement for good cause as defined below. Good cause shall be limited to constructive discharge, harassment, breach of this agreement, failure to perform radiological services under this agreement in a professional manner, or conduct of either party which falls below the applicable standards and/or fails to comply with applicable laws, rules or regulations. In addition, good cause includes the failure of either party to comply with applicable medical staff by laws, rules, regulations, policies, or practices of facilities at which either party has privileges.

In the event of contract expiration or in the event of termination, as provided herein, for any reason whatsoever other than termination without cause, Provider agrees that he shall not engage in any activity that contractually provides radiology interpretations via teleradiology to any current client or entity that has been a client of AMI for the past 6 months, whether alone, as a partner or as an officer, director, contractor, employee or shareholder of any corporation or as a trustee, fiduciary or other representative of any other entity for a period of one (1) year, following the effective termination date of this agreement. In addition, in the event of termination as provided herein, for any reason whatsoever, for a period of two (2) years following the effective termination date of this Agreement, Provider agrees that he will not perform radiological professional services through contractual agreement or otherwise, on behalf of or for any entities that have or have had in place any contractual agreement with AMI prior to the effective termination date of this Agreement.

Provider agrees that only when he begins working with AMI on a full-time basis, Provider shall not, without the prior written consent of AMI, directly or indirectly, during the term of this Agreement, engage in any activity competitive with or adverse to AMI's business or practice, defined as providing radiology interpretations via teleradiology. However, this does not apply when Provider is working on a part-time basis. This section is not meant to limit Provider from

joining any single local radiology group, and providing the necessary local radiology services for that group.

In the event of termination by Provider without cause or by AMI for cause, Provider agrees that all state licensing and credentialing costs and expenses shall be repaid by Contractor in proportion to the time remaining on the contract when terminated.

If AMI OR Provider wishes to terminate this agreement without cause, it must do the following:
   (1) Give 30 days' written notice of the termination to either Party.

5. MALPRACTICE INSURANCE. AMI shall provide medical malpractice coverage to **Ranjiv Saini**, M.D. for all of cases that **Ranjiv Saini**, M.D. interprets on behalf of AMI.

6. NON-SOLICITATION/NON-COMPETE. During the term of the Agreement, and for a period of 12 months thereafter, Provider shall not directly or indirectly employ or contract with any employee, any current client, or any recent client (a recent client is a client who has contracted with either party in the last 6 months) client of the other party, or induce or solicit any employee to leave his or her employment.

7. INDEMNIFICATION.
   (A) To the extend not covered by insurance maintained or required to be maintained by AMI, a Provider shall indemnify and hold AMI harmless from any and all liability, loss, expenses (including attorney fees) or damages arising out of a breach by such Provider of any provision of this Agreement, or arising from injury to person or property resulting from any services provided by such Provider in connection with this Agreement. In no event shall any Provider be required to indemnify AMI for, or otherwise be responsible for, any act or omission by any other physician.

   (B) AMI shall indemnify and hold Provider harmless from any and all liability, loss, expenses (including attorney fees) or damages arising out of a breach by AMI, its officers, employees, Providers, and agents of any provision of this Agreement, or arising from injury to person or property resulting directly or indirectly from any services or activities in connection with this Agreement performed or failed to be performed by either AMI, its Providers or any individual employed or otherwise engaged by AMI. This provision shall survive termination or expiration of this Agreement.

8. FORCE MAJEURE. If, by reason of any contingency beyond Provider's control, including, but not limited to, war, terrorism, fire, flood, casualty, accident, or other acts of God, strikes or other difficulties with employees, Internet or independent contractors or any other similar occurrence, and physicians are not reasonably able to meet its obligations under this Agreement, Physicians shall not be liable therefore. Providers will not be responsible for lost revenue associated with technical failures at either the sending or receiving site(s).

9. QUALIFICATIONS. Provider shall during the term of this Agreement be an American Board of Radiology certified radiologist and continuously meet the following requirements: Provider shall insure he is qualified to practice medicine in the states for which AMI serves patients; and will make a good faith effort to obtain licensure and hospital credentialing as required. However, regardless of success, failure to obtain the above shall not result in a breach

of this agreement, as long as Provider has acted in good faith.

Provider shall be insurable for the coverage set forth in section 5 hereof regarding professional liability insurance.

10. WORKING FACILITIES, COMPUTER EQUIPMENT AND MONITORS. AMI at its discretion shall provide equipment, and assistance, as reasonably necessary for Provider to perform the radiological interpretations.
    a. AMI will LEASE Contractor any necessary equipment in a manner that is consistent with the rules governing the provision of equipment by a Corporation to a Contractor.
    b. Contractor is responsible for the financial costs of replacing the equipment if loss or damage is due to negligence.

11. MEDICAL RECORDS. All files, reports, case records, case histories and all other documents or records concerning patients of AMI or patients consulted, interviewed or treated and cared for by Provider, pursuant to this Agreement, shall belong to and remain the property of AMI, provided, however, that upon the termination of this Agreement, Provider shall have the privilege, within one hundred eighty (180) days after such termination and upon presentation to AMI of a written direction from any patient, of reproducing, at Provider's reasonable expense, but under the control and supervision of AMI, any of AMI's files and records retained for such patient during the term of this Agreement. Likewise, in the event a claim is asserted against Provider regarding services provided under this Agreement, Provider shall be entitled to obtain copies of all records concerning the patient in question. Such right may be exercised both during the term of this Agreement and subsequent to the termination or expiration of the Agreement.

12. CONFIDENTIALITY. It is agreed that during the term of this Agreement the specific terms of this Agreement entered into between AMI and Provider shall remain confidential between the parties. AMI and Provider can acknowledge a working relationship, but financial terms and proprietary information are not to be disclosed to parties not subject to this Agreement. However, nothing herein shall prevent Provider from providing a copy of this Agreement or disclosing the terms of the Agreement to his financial and legal advisers or to a governmental agency with authority to obtain such information.

13. CONVICTION OR DISQUALIFICATION. This Agreement is terminated immediately in the event of Provider's death, conviction of a felony or in the event of the disqualification of Provider to practice medicine in any state in which AMI services customers. The Termination Date in such cases shall be the date of conviction or the date of disqualification, whichever is applicable.

14. NOTICES. Any and all notices under this Agreement shall be sufficient if furnished in writing and sent by certified mail to the registered office of either party.



15. GENERAL PROVISIONS. This Agreement, when properly executed by both parties, constitutes the entire agreement and understanding between the parties with respect to the appointment of Provider in providing the radiological interpretations. The terms of this Agreement may be modified only by subsequent written agreement signed by both parties. In the event that any part of this Agreement is declared or rendered invalid by court decision or statute, the remaining provisions of the Agreement shall remain in full force and effect.

16. GOVERNING LAW. The Agreement shall be interpreted, construed and governed according to the laws of the State of Virginia.

17. ATTORNEY FEES AND COSTS. In the event that either party resorts to legal action to enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to recover the cost of such action so incurred, including, without limitation, reasonable attorney's fees, costs and expenses.

18. ASSIGNMENT. Neither party may assign this Agreement, or any right or obligation under it without the prior written consent of the other party.

19. MODIFICATION. This Agreement may not be modified by either party without the prior written consent of the other.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written, to be effective, however, as of November 25, 2013.

_____     _____
Naiyer Imam, M.D.                Date
Chairman and CEO
AMI Teleradiology


_[signature]_____     _11/25/2013_____
Ranjiv Saini, M.D.               Date